Johnnie Mae RIGGSBEE, Appellant,

v.

Terrel H. BELL, Secretary, Department of Education, and American College Testing Program, Appellees.

Appeal No. 85–2105.

United States Court of Appeals, Federal Circuit.

April 3, 1986.

Anthony Z. Roisman, Washington, D.C., argued, for appellant. With him on brief, was Susan J. Vogel.

A. Patricia Frohman, Asst. U.S. Atty., Dept. of Justice, Washington, D.C., argued, for appellee Bell. With her on brief, were Joseph E. Digenova, U.S. Atty., Royce C. Lamberth, R. Craig Lawrence and Michael J. Ryan, Asst. U.S. Attys., Harold Jenkins and Stephen M. Kraut, U.S. Dept. of Educ., Washington, D.C., of counsel.

Joyce E. Reback, Washington, D.C., argued, for appellee ACTP.

Before FRIEDMAN and DAVIS, Circuit Judges, and MILLER, Senior Circuit Judge.

FRIEDMAN, Circuit Judge.

The principal issue in this case, here on appeal from the United States District Court for the District of Columbia, is whether section 483(a) of the Higher Education Act of 1965, as amended, 20 U.S.C. § 1090(a) (1982), precludes the charging of a fee for the processing of any application by a post-secondary school student for federal aid. The district court held that section 483(a) does not contain such a broad bar but prohibits charging only for the processing of certain types of applications. We affirm.

I

A. This case involves two types of post-secondary education benefits that Congress funds under Title IV of the Higher Education Act of 1965, as amended, 20 U.S.C. § 1070 et seq. (1982).

Under the first type, known as Pell Grants, the Secretary of Education makes direct payments to qualified students. For the 1982–83 academic year, which this case involves, the basic Pell Grant was $1,800, less the student's "expected family contribution" for that year, and less other statutorily prescribed adjustments. 20 U.S.C. § 1070a (1982). By agreement between the Secretary and each eligible institution of higher education, the institution administers the Pell Grants for the Secretary. The institution determines student eligibility and the amount of each grant pursuant to federal statutory and regulatory guidelines, and disburses the funds to qualifying students without any limit on the total funds it may disburse. *Id.*

The second type of financial aid consists of three so-called "campus-based" programs, under which the students may receive grants or loans, or be provided with work. 20 U.S.C. § 1070b—1070b-3, 1087aa—1087ii; 42 U.S.C. §§ 2751—2756b (1982). Under these programs, the federal government gives each participating institution a specific amount, determined according to statutory and regulatory criteria. 20

U.S.C. §§ 1070b–3, 1087bb; 42 U.S.C. §§ 2752, 2756. *See also* 34 C.F.R. §§ 676.-6, 674.6, 675.6 (1982). Each individual institution had broad discretion to select the students to receive such aid and to determine the form and amount of the aid, also based upon federal statutory and regulatory criteria. 20 U.S.C. §§ 1070b–1, 1087cc—1087dd; 42 U.S.C. § 2753. *See also* 34 C.F.R. §§ 676.9–676.16, 674.9–674.16, 675.-9–675.16 (1982).

To qualify for either type of aid, a student had to demonstrate (1) financial need, and (2) enrollment at an educational institution that has qualified for participation in the student assistance program. 20 U.S.C. §§ 1070a(a), 1070b–1, 1087dd(b), 1089, 1091; 42 U.S.C. § 2753(b)(3).

B. The appellant Ms. Riggsbee filed an application for financial assistance with the University of the District of Columbia for the 1982–83 academic year. She filed the application on a form prepared by the appellee, American College Testing Program (College Testing), called the Family Financial Statement. She sought both a Pell Grant and campus-based aid. College Testing charged her $6 for processing the application.

Pursuant to section 483(a), discussed below, the Secretary had entered into a contract with College Testing for the latter to prepare application forms (which the Secretary would approve before use) upon which students would submit the necessary data for federal and other aid programs. College Testing would charge students for processing the application.

The Secretary also had published his own application form, called the Application for Federal Student Aid (Federal Form). This form enabled the student to submit the information necessary to determine financial eligibility for student aid, which reflected the expected family contribution to the student's educational costs, and also provided certain other information related to the student's educational program and status. The Department of Education processed these application forms without charge.

Following the processing, the Department gave the student a report that contained two indices of expected family contribution—one to be used in applications for Pell Grants and the other to be used in applications for campus-based aid. The Federal Form contained less information than the Family Financial Statement, since the Federal Form related mainly to the student's financial eligibility for aid and did not encompass all other information schools used in awarding campus-based aid. The appellant asserts that the University of the District of Columbia did not permit her to use the Federal Form in applying for both campus-based aid and a Pell Grant.

C. Ms. Riggsbee and others filed suit against the United States, the Secretary of Education, and College Testing, seeking declaratory, injunctive, and monetary relief. They contended that the Secretary had violated section 483(a) by entering into the contract with College Testing and permitting the use of the latter's test, for the processing of which College Testing charged a fee, when only federal aid was sought. They also alleged that the Secretary further had violated the statute by instructing College Testing to eliminate from its form for the 1982–83 academic year a provision permitting use of the form to apply solely for a Pell Grant without a processing charge. They asserted that College Testing violated the statute by charging her the $6 fee for processing her application. The suit was brought as a class action, but the district court did not certify it as such.

On cross-motions for partial summary judgment and on the federal defendants' motion to dismiss portions of the complaint, the district court held that there were no disputed issues of material fact and that the defendants had not violated section 483(a). The court therefore dismissed the complaint.

The court held that the Secretary had complied with section 483(a) by making the free Federal Form available to process the data elements necessary to determine a student's need and eligibility for federal

financial aid. The court further held that the federal defendants had not violated the section by entering into the contract with College Testing under which the latter charged for the processing of applications for federal aid, since the data elements of the College Testing form were not the same as but were broader than those on the Federal Form.

■ Only Ms. Riggsbee has appealed from that decision. We have jurisdiction over the appeal under 28 U.S.C. § 1295(a)(2) (1982), which covers appeals in which the jurisdiction of the district court "was based, in whole or in part" on 28 U.S.C. § 1346. Since the appellant sought to recover from the United States the $6 she had paid for the processing of her application, the jurisdiction of the district court was based in part on 28 U.S.C. § 1346(a)(2), which gives the district courts jurisdiction over civil actions against the United States involving a claim for less than $10,000 that is founded upon an "Act of Congress, or, any regulation of an executive department...."

## II

Section 483(a), which was added to the statute by section 451 of the Education Amendments of 1980, Public Law 96–374, provides in pertinent part:

The Secretary, in cooperation with representatives of agencies and organizations involved in student financial assistance, shall prescribe a common Federal financial aid application form to be used to determine the need and eligibility of a student for financial assistance under this subchapter.... No student or parent of a student shall be charged a fee for processing the data elements of the form prescribed by the Secretary. The Secretary shall, to the extent practicable, enter into not less than three contracts with ... institutions of higher education ... for the purpose of processing the application required under this subsection and issuing eligibility reports.

■ The appellant reads these provisions as mandating that no fee may be charged

for the processing of any application for any federal student financial aid, whether such aid be a Pell Grant, a campus-based program, or both. We agree with the district court, however, that section 483(a) has a narrower reach and that the Secretary's prescription of the free Federal Form and his authorization of the College Testing application form with a $6 processing fee satisfied the requirements of that section.

A. The statute bars the charging of a fee for processing "the data elements of the form prescribed by the Secretary." This refers to the directive in the statute's preceding sentence that the Secretary prescribe a "common Federal financial aid application form to be used to determine the need and eligibility of a student for financial assistance...." Since the information the Secretary's form is required to provide is that used to determine the student's "need and eligibility" for financial assistance, the "data elements" in the Secretary's form, for the processing of which a fee cannot be charged, are those that define the student's "need and eligibility."

The only "Federal financial aid application form" the Secretary prescribed pursuant to section 483(a) was the Application for Federal Student Aid. No charge was made for processing this form, and it provided all the information necessary to determine the student's "need and eligibility" for federal assistance. We interpret those words to refer to "the determination of whether a student has an expected family contribution low enough to be included in the class of persons eligible for financial assistance under the Pell Grant and campus-based programs," as the district court held, and also to cover the nonfinancial information that the Federal Form included.

■ In requiring the Secretary to provide a form "to be used to determine the need and eligibility of a student for financial assistance," for the processing of which no fee would be charged, we do not think Congress intended to require the Secretary's form to provide all the information

the participating schools required to determine whether a particular student is entitled to campus-based assistance, and if so entitled, the type and amount of such assistance. Congress did not broadly direct the Secretary to provide a form to determine whether a student actually would receive federal assistance, but only one to determine the narrower criteria of whether the student "needed" and was "eligible" to receive assistance. We think that in using the latter phrase Congress intended to limit the Secretary's responsibility to prescribing a form that would provide the data necessary to determine whether the student met the financial and school qualification criteria, but not the additional criteria that the schools consider in awarding campus-based assistance.

Section 483(a) does not state, as the appellant would read it, that no fee will be charged for processing an application for federal aid. The standard is much narrower—no fee will be charged for processing the "data elements of the form prescribed by the Secretary." As noted, those data elements cover only the student's "need and eligibility."

When it amended the Higher Education Act of 1965 in 1980, Congress presumably was aware of the different information upon which determinations were made to award Pell Grants and campus-based assistance. If Congress had intended to require the Secretary to provide a single application form to be processed without charge that would provide the necessary data to decide all applications for federal student assistance, it could and presumably would have explicitly so provided. Instead, it adopted the narrower provision in section 483(a) that the Secretary prescribe a form providing information relating only to a student's "need and eligibility."

B. The appellant contends that the legislative history supports her reading of section 483(a). She cites passages in the Senate and House Committee Reports on that section. The House Committee Report stated: "This provision also requires that students will not be charged a fee for pro-

cessing the data elements which are required to determine eligibility for federal assistance." H.R.Rep. No. 520, 96th Cong., 1st Sess. 45 (1979), U.S.Code Cong. & Admin.News 1980, pp. 3141, 3185. The Senate Committee Report merely tracked the language of the statute. It stated:

In an attempt to simplify the financial aid process, the bill directs the Secretary, in co-operation with agencies and organizations involved in student financial assistance, to develop a common federal financial aid application form to be used to determine a student's need and eligibility for [Pell Grants and campus-based aid]. . . .

Currently students and their parents may be charged fees for processing applications for federal (excluding Basic Grants) and non-federal student aid programs. A new provision requires that no fees will be charged for processing the data elements on the common federal application form prescribed by the Secretary and directs the Secretary to contract for processing of the data elements.

S.Rep. No. 733, 96th Cong., 2d Sess. 51 (1980).

Neither of these statements shows that Congress intended to require the Secretary to prescribe an application form covering all types of federal student assistance, for which there would be no processing charge.

The appellant also relies on post-enactment history. She refers to a 1982 House Committee Report on a bill to amend the Pell Grant programs. That report stated that the "Committee expects the Secretary to enter into contracts" for the preparation of application forms containing "an option by which a student may apply for Federal aid only . . . without paying a fee. . . ." H.R.Rep. No. 814, 97th Cong., 2d Sess. 3 (1982). "Such *post hoc* statements of a congressional Committee are not entitled to much weight." *Weinberger v. Rossi,* 456 U.S. 25, 35, 102 S.Ct. 1510, 1518, 71 L.Ed.2d 715 (1982). Even less weight is to be accorded to letters the appellant cites that were sent to the Secretary in 1982 by two individual members of

the House and Senate Committees. Those letters stated the views of the individual members that the charging of fees to students applying for federal assistance violated federal law. They provide no light upon the intent of the Congress that had enacted the legislation two years earlier. *Southeastern Community College v. Davis*, 442 U.S. 397, 411 n. 11, 99 S.Ct. 2361, 2370 n. 11, 60 L.Ed.2d 980 (1979).

Finally, the appellant relies upon a 1982 opinion of the Comptroller General, rendered in response to a request from the chairman of a House Subcommittee considering the issue, that section 483(a) prohibits the charging of a fee "for filing student Federal financial aid application forms...." Opinion of the Comptroller General B–206573(1) (May 12, 1982). For the reasons stated in this opinion, we find the Comptroller General's conclusion unpersuasive. We give no weight to a 1982 report by the Congressional Research Service, upon which the appellant also relies, that reached the same conclusions. 2A *Sutherland Statutory Construction* § 49.-06 (N. Singer, 4th ed. 1984).

■ C. Since the appellant applied for both campus-based aid and a Pell Grant for the academic year 1982–83, she was not injured by, and therefore has no standing to challenge, the Secretary's instruction that College Testing eliminate from its form for that year the provision by which a student could apply solely for a Pell Grant without paying a processing fee. There is no question that she has standing to litigate the other issues we decide in this opinion.

## III

The judgment of the district court may be affirmed on the alternative ground that the Third Continuing Resolution of Public Law 97–92, 95 Stat. 1183 (Dec. 15, 1981), rendered section 483(a) inoperative for the 1982–83 academic year which, as noted, is the only year involved in this case. Although the district court rejected the argument, we would sustain it if necessary to our decision.

## CONCLUSION

The judgment of the district court is affirmed.

AFFIRMED.